Gerald V. HODGE, Plaintiff–Appellee,

v.

Donna SHALALA, Secretary of Health and Human Services,* Defendant–Appellant.

No. 92–35559.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1993.

Decided June 21, 1994.

---

* Donna Shalala has been substituted for her predecessor in office, Louis W. Sullivan, M.D., pursuant to Federal Rule of Appellate Procedure 43(c)(1).

Steven Frank, U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

James S. Coon, Royce, Swanson, Thomas & Coon, Portland, OR, for plaintiff-appellee.

Before: REINHARDT, BRUNETTI, and FERNANDEZ, Circuit Judges.

Opinion by Judge REINHARDT.

REINHARDT, Circuit Judge:

## I. INTRODUCTION

The Secretary of Health and Human Services ("Secretary") appeals the district court's holding that Gerald Hodge ("Hodge") was not required to offset a state lump-sum disability award ("lump-sum award") against his federal social security benefits. We reverse. Under 42 U.S.C. § 424a(a)(2), Hodge must offset his lump-sum award for the months during which he also received his federal benefits.

The Secretary argues that the monthly offset amount should be equal to what Hodge had previously received each month in state temporary disability payments. By contrast, Hodge argues that the offset amount should be equal to his lump-sum award divided by the expected number of months remaining in his natural life. We reject both arguments. We conclude that the offset amount should be equal to Hodge's lump-sum award divided by the number of months between the date of the award and the date Hodge reaches the age of 65.

## II. BACKGROUND

Hodge, a 55–year old boilermaker in Oregon, suffered a work-related injury to his right wrist on October 23, 1986. His right wrist was caught and severely twisted by 500–pound tubes as he retubed a boiler. Hodge applied for and received workers' compensation benefits under Oregon state law. From October 24, 1986 through May 20, 1987 (seven months), Hodge was temporarily disabled and received $344.77 per week in state temporary disability payments.

The state eventually determined that Hodge had permanently lost the use of 40%

of his right forearm. He was deemed permanently injured as of May 20, 1987 and received a state lump-sum award of $4,068.75 for this permanent partial disability.[1]

In addition to the above state benefits, Hodge also applied for and received federal social security benefits. The Social Security Administration awarded him federal benefits for a closed period between October 22, 1986 through February 29, 1988. To avoid a windfall, the Secretary offset Hodge's lump-sum award of $4,068.75 at a rate of $344.77 per week, the rate at which Hodge's state temporary disability payments had been made.

Hodge challenged the Secretary's decision to offset his lump-sum award and, alternatively, the rate at which his lump-sum award should be offset. The Administrative Law Judge ("ALJ") and Appeals Council both affirmed the Secretary's decision. In a published decision, the district court reversed the Secretary's decision to offset Hodge's award. *See Hodge v. Sullivan,* 791 F.Supp. 256 (D.Or.1992). The court did not reach the offset rate question.

### III. DISCUSSION

#### A. Offset of the Lump–Sum Award

*1. Statutory Background.* Federal statutory law requires that certain state disability payments—i.e., "periodic benefits"—be offset against federal social security benefits. *See* 42 U.S.C. § 424a(a).[2] Such "periodic benefits" must be offset during any month in which federal benefits are also received. *Id.* Congress intended this to prevent double recovery. *See, e.g.,* S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.C.C.A.N. 1943, 2040–42.

We have recognized that the scope of the federal offset provisions is extremely broad. Even lump-sum awards are "periodic benefits" as long as they are "a commutation of, or a substitute for, periodic payments." *See id.* at § 424a(b);[3] *see also Black v. Schweiker,* 670 F.2d 108, 109–10 (9th Cir. 1982) (finding a lump-sum award to be a "periodic benefit[ ]"); *Worley v. Harris,* 666 F.2d 417, 420 (9th Cir.1982) (same).

*2. Analysis.* Hodge argues that his state lump-sum award of $4,068.75—a "scheduled" award—is not a "periodic benefit" and is therefore not subject to the offset provisions of 42 U.S.C. § 424a(a)(2). Hodge relies principally upon the distinction between "scheduled" and "unscheduled" awards under the Oregon statutory scheme.

Under Oregon statutory law, a worker who is permanently partially disabled receives ei-

---

**1.** Hodge's total award was $7,500.00. Of that amount, $1,406.25 went to his attorneys, $150.00 went to court costs, and $1,875.00 was returned to the state for an earlier overpayment. That left Hodge with $4,068.75.

**2.** Section 424a(a) provides in pertinent part:

(a) Conditions for reduction; computation
If for any month prior to the month in which an individual attains the age of 65—
(1) such individual is entitled to benefits under section 423 of this title [disability insurance benefit payments], and
(2) such individual is entitled for such month to—
(A) periodic benefits on account of such individual's total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State
...
the total of his benefits under section 423 ... shall be reduced (but not below zero) by the amount by which the sum of
(3) such total of benefits under section[ ] 423 ... for such month, and

(4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,
exceeds the higher of—
(5) 80 per centum of his "average current earnings", or
(6) the total of such individual's disability insurance benefits under section 423 of this title for such month....

**3.** Section 424a(b) provides:

(b) Reduction where benefits payable on other than monthly basis
If any periodic benefit for a total or partial disability under a law or plan described in subsection (a)(2) of this section is payable on other than a monthly basis (*excluding a benefit payable as a lump sum except to the extent that it is a commutation of, or a substitute for, periodic payments*), the reduction under this section shall be made at such time or times and in such amounts as the Secretary finds will approximate as nearly as practicable the reduction prescribed by subsection (a) of this section.
*Id.* (emphasis added).

ther a scheduled or an unscheduled award. Scheduled awards are fixed-sum awards for injuries to certain specified limbs or body parts. *See* Or.Rev.Stat. §§ 656.214(2) to .214(4) (1993).[4] Unscheduled awards are awards for all other injuries. These awards are calculated by determining the "permanent *loss of earning capacity* due to the compensable injury" and by reference to the worker's age, education, impairment, and adaptability to perform a given job. *See id.* at § 656.214(5) (emphasis added).

As an initial matter, Hodge concedes that *un*scheduled awards are "periodic benefits" that are subject to the offset provisions of 42 U.S.C. § 424a(a)(2). Under the Oregon statutory scheme, unscheduled awards are expressly based upon a worker's "loss of earning capacity." *See id.* § 656.214(5). Such awards can therefore be characterized as a stream of payments for the remainder of Hodge's working life. *See Wilson v. Goodrich Co.,* 52 Or.App. 139, 627 P.2d 1280, 1282 n. 1 (1981) (in a products liability case, characterizing "earning capacity" as the "projected dollar value of earnings plaintiff would have obtained over his working life had he not been injured"), *aff'd,* 292 Or. 626, 642 P.2d 644 (1982). Accordingly, such awards are "periodic benefits" and are subject to section 424a(a)(2).

However, Hodge maintains that scheduled awards are *not* "periodic benefits" that are subject to the offset provisions of 42 U.S.C. § 424a(a)(2). Under the Oregon statutory scheme, scheduled awards are calculated based upon the value assigned to the body part that is injured. *See* Or.Rev.Stat. §§ 656.214(2) to .214(4). Hodge argues that, unlike unscheduled awards, scheduled awards do *not* depend upon lost earning capacity. Accordingly, scheduled awards are not "periodic benefits" and need not be offset against federal benefits.

We disagree. Oregon law clearly rejects Hodge's distinction between scheduled and unscheduled awards. The Oregon Supreme Court has held that *both* types of awards—scheduled and unscheduled—are intended to cover a claimant's lost earning capacity:

> The *entire* scheme of Workers' Compensation Law is to compensate *workers,* who are active in the labor market, for wages lost because of *inability (or reduced capacity) to work* as a result of a compensable injury....

*Cutright v. Weyerhaeuser Co.,* 299 Or. 290, 702 P.2d 403, 407 (1985) (first and last emphasis added). The court emphasized that "the legislature intended workers' compensation benefits to provide *wage replacement." Id.* (emphasis added); *see also Surratt v. Gunderson Bros. Engineering Corp.,* 259 Or. 65, 485 P.2d 410, 413 (1971) (holding that both unscheduled *and* scheduled permanent disability awards "relate to loss of earning capacity" (internal quotes omitted)).

Of course, scheduled awards may "sometimes overstate and sometimes understate the actual loss of earning capacity of the injured individual." *In re Woodman,* 289 Or. 551, 614 P.2d 1162, 1164 (1980). These discrepancies do not change the basic fact that such awards still represent a stream of lost future wages. The Oregon legislature simply intended to "simplify and expedite settlement of such claims by excluding disputed predictions of the *claimant's future earning capacity." Id.* (emphasis added).

In sum, even though the Oregon legislature has assigned specific dollar amounts to particular body parts, scheduled payments are still "designed to compensate for the economic loss of earning capacity." *See id.* Accordingly, we cannot accept Hodge's distinction between scheduled and unscheduled awards. Both types of awards "substitute for" periodic benefits, *see* 42 U.S.C. § 424a(b), and both must be offset to the extent that they overlap with federal benefits in a given month. *Accord Davidson v. Secretary of HHS,* 942 F.2d 90 (1st Cir.1991).[5]

---

**4.** For example, the statute defines the permanent loss of one forearm at or above the wrist joint as being worth 150 "degrees" of injury. Each degree of injury is worth $145.00. *See id.* Accordingly, the permanent loss of one forearm is worth $21,750.00 (150 degrees × $145.00). Propor-

tionate sums are awarded for all losses less than a complete loss.

**5.** Hodge and the court below rely upon *Lemire v. Secretary,* 682 F.Supp. 102 (D.N.H.1988), which held that a New Hampshire lump-sum payment

### B. Offset Amount

*1. Overview.* Because we conclude that Hodge is required to offset his lump-sum award against his federal benefits, we must now determine the *amount* to be offset each month. The Secretary argues that the monthly offset amount should be equal to what Hodge had previously received each month in temporary state disability payments (approximately $1,379.08 per month).[6] By contrast, Hodge argues that the offset amount should be equal to his lump-sum award divided by the expected number of months remaining in his natural life (approximately $16.47 per month).[7] We reject both arguments. We conclude instead that, under 42 U.S.C. § 424a(b), the monthly offset amount should be equal to Hodge's lump-sum award divided by the number of months between the date of the award and the date Hodge reaches the age of 65.

■ *2. Background.* Federal statutory law requires that lump-sum awards be offset at a rate that will "approximate as nearly as practicable" the rate at which the award would have been paid on a monthly basis. *See* 42 U.S.C. § 424a(b).[8] For example, a lump-sum award of $2,400.00 that is intended to compensate a claimant over a two-year period would be offset at a rate of $100.00 per month ($2,400.00 award/24 months). This is because the lump-sum award of $2,400.00 is simply a substitute for a stream of $100.00 monthly payments over a two-year period.

The Secretary has promulgated policy guidelines for calculating the rate at which various kinds of awards should be offset. *See* Secretary's Programs Operations Manual System § DI 52001.555(C)(4) [hereinafter POMS]. One provision establishes a three-step procedure for calculating the offset rate for lump-sum awards. The provision states:

### 4. AMOUNT AT WHICH TO PRORATE

LS [lump-sum] awards will be prorated at an established weekly [9] rate. The priority for establishing weekly rates is as follows:

a. *The rate specified in the LS award.* If the LS award specifies a rate based on life expectancy, use that rate to prorate the LS and list under code 557.

b. *The periodic rate paid prior to the LS* if no rate is specified in the LS award.

c. If WC [workers' compensation], *the State's WC maximum in effect on the date of injury.* This figure can be used if no rate is specified in the award and there was no preceding periodic benefit. . . . The State maximum is the periodic rate that, in almost every case, would have been payable had periodic payments been made instead of a LS.

. . .

*See id.* §§ DI 52001.55(C)(4)(a) to (C)(4)(c) (emphasis added).

*3. Analysis.* Here, the ALJ found that no offset rate was "specified" in Hodge's lump-sum award. Applying the second step of the Secretary's guidelines, *see* POMS § DI 52001.55(C)(4)(b), the ALJ based the offset rate on a "prior" periodic rate—i.e., Hodge's state temporary disability payments of $344.77 per week (approximately $1,379.08 per month). *See id.* The Appeals Council affirmed. We now reverse.

While the Secretary's guidelines are far from clear, we conclude that in this case the ALJ erred by using the "prior" periodic rate. Under 42 U.S.C. § 424a(b), the Secretary must "approximate as nearly as practicable" the rate at which the lump-sum award would

---

did not have to be offset from federal social security benefits. *Lemire's* holding was subsequently overruled by the First Circuit in *Davidson,* however, and thus loses its value as persuasive authority.

**6.** That is, $344.77 per week × 4 weeks = $1,379.08 per month.

**7.** Hodge had a life expectancy of 247 months on the date that he became eligible for his lump-sum award. Thus, $4,068.75/247 months = $16.47 per month.

**8.** For the text of section 424a(b), see note 3 above.

**9.** Proration on a weekly basis is at odds with the statutory mandate of proration on a *monthly* basis. *See* 42 U.S.C. § 424a(b). Accordingly, we follow the statutory mandate instead of the Secretary's guidelines.

have been paid on a monthly basis. As we have already explained, under Oregon state law Hodge's lump-sum award is simply a substitute for a stream of payments for the remainder of his working life. *See supra* pp. 433–34. Because under 42 U.S.C. § 424a(a) this period is presumed to extend until a person turns 65, we apply that date for the purpose of determining the monthly offsets. Accordingly, the best approximation of the monthly offset rate here, indeed the only possible approximation of that rate, is the amount arrived at by dividing the lump-sum award by the number of months between the date of the lump-sum award and the date Hodge reaches the age of 65.[10]

While it is true that Hodge's award does not *literally* specify a monthly offset "rate," the ALJ's construction of the guidelines here conflicts with the plain language and purpose of 42 U.S.C. § 424a(b). We do not think that the Secretary meant the guidelines to create such a conflict. Rather, we believe that the Secretary intended the guidelines to *help*— and not hinder—the implementation of the statute. Where the monthly offset rate can be determined by the application of established state law, the clear statutory command governs. In such cases, there is simply no need to turn to the guidelines for assistance, and their application is not warranted. Viewing the issue from a different perspective, the guidelines must be read in light of the clear statutory requirement. Under that approach, if the guidelines are to be applied, it must be done in a manner consistent with the statute. In order to do so, we must construe the term "award" as having a broader meaning than the Secretary suggests. Under that view, § DI 52001.-55(C)(4)(a) of the guidelines refers not only to a rate set forth *in haec verba*, but also to a rate specified by operation of law. In short, under either approach, the ALJ should apply the state's prior periodic rate only where the applicable monthly offset rate is not established by state law.

Our conclusion is consistent with Ninth Circuit precedent. In *Worley v. Harris*, 666

F.2d 417 (9th Cir.1982), we affirmed the Social Security Administration's ("SSA") proration of an Oregon claimant's lump-sum disability payment in this manner. In *Worley* we held that, "pursuant to 42 U.S.C. § 424a(b), [the SSA] prorated the lump-sum over the years remaining before appellant attained age 62, the statutory limit for imposing the offset." *Worley*, 666 F.2d at 419. Congress subsequently amended 42 U.S.C. § 424a to change the statutory limit to 65. Pub.L. No. 97–35, § 2208(a)(2) (1981). We conclude that the ALJ in this case erred by failing to prorate Hodge's lump-sum payment in the manner described in *Worley*.

*4. The* Mann *Decision.* The Secretary's cites to *Mann v. Heckler*, 1A Unempl. Ins. Rep. (CCH) ¶ 16,952, 1986 WL 36270 (D.Me. Mar. 17, 1986), *aff'd without opinion*, 802 F.2d 440 (1st Cir.1986), in support of her position. In *Mann*, a federal district court rejected a Maine claimant's argument that his state lump-sum settlement of an unspecified duration should have been prorated over the rest of his natural life. The court held that because the award failed to specify any offset rate, the Secretary could properly offset the award at a previous rate at which the claimant had been paid by the state. *See id.* (applying § DI 52001.55(C)(4)(b)). The Secretary subsequently adopted the *Mann* decision as Social Security Ruling 87–21(c). It is applicable in all circumstances in which guidance is necessary or helpful, and in which the statute does not command a contrary result.

We conclude that the *Mann* decision is not applicable to this case. In *Mann*, the district court had no way of "approximat[ing] as nearly as practicable" the rate at which the claimant's lump-sum settlement would have been paid on a monthly basis. According to the court:

> For all the court knows *or the Secretary could determine, the parties may have concluded that the plaintiff's disability claims would not last a lifetime, but only for a specific term of years* and reached their settlement based upon that view.

for a stream of payments for the remainder of Hodge's working life, *see supra* pp. 433–34, not over the remainder of his natural life.

---

**10.** Hodge's argument that the award should be prorated over his natural life must also be rejected. Under Oregon law, the award is a substitute

*Id.* (emphasis added). The specific settlement amount in *Mann* was not dictated by statute; neither was the specific rate at which that amount would have been paid. The district court did not cite to any Maine state-law cases. By contrast, Oregon state law allows us to "approximate as nearly as practicable" the rate at which Hodge's lump-sum award would have been paid on a monthly basis. In fact, it does more. It makes it clear precisely what that rate is. Accordingly, we conclude that the *Mann* decision is not applicable here.

### C. Calculation

As we explained earlier, 42 U.S.C. § 424a(a) requires Hodge to offset all "periodic benefits" for all months during which he also received federal benefits. *See* discussion *supra* pp. 432–33. Hodge's lump-sum award is a substitute for a stream of "periodic benefits" starting on May 20, 1987, and ending on his sixty-fifth birthday. *See* discussion *supra* pp. 6604, 6607–9. By contrast, Hodge's federal benefits were expressly awarded for a "closed period" between October 22, 1986, and February 29, 1988. *See supra* p. 432. Accordingly, Hodge's state and federal benefits overlapped for a period of approximately nine months—i.e., between May 20, 1987, and February 29, 1988. We remand to the district court for determination of the precise amount of benefits Hodge is entitled to receive in light of our holding and all other applicable provisions of law. *See, e.g.,* 42 U.S.C. § 424a(a)(5).

### IV. CONCLUSION

We reverse the judgment of the district court. Under 42 U.S.C. § 424a(a)(2), Hodge is required to offset his state scheduled lump-sum award for the nine months during which he also received federal social security benefits. In calculating the monthly offset amount, the district court should divide Hodge's lump-sum award by the number of months between the date of the award and the date Hodge turns 65. We remand so that the precise amount of benefits to which Hodge is entitled may be calculated.

REVERSED and REMANDED.