Kevin BUBNIS, Plaintiff,

v.

Shirley CHATER, in her capacity as Commissioner of the Social Security Administration, Defendant.

No. CV–95–1531 (ADS).

United States District Court,
E.D. New York.

March 22, 1997.

Scheine, Fusco, Brandenstein & Rada, P.C., Woodbury, NY (Victor Fusco, of counsel), for Plaintiff.

Zachary W. Carter, U.S. Attorney, Eastern District of New York, Brooklyn, NY (Leslie Brodsky, Assistant U.S. Attorney), for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Kevin Bubnis (the "plaintiff" or "Bubnis") commenced this action on or about April 18, 1995 pursuant to 42 U.S.C. § 405(g) of the Social Security Act to review a final administrative determination of the Commissioner of the Social Security Administration. The plaintiff challenges the method by which the Social Security Administration, under 42 U.S.C. § 424a(a), calculated the Workers' Compensation offset to his social security disability benefits. The defendant, Shirley S. Chater, Commissioner of Social Security (the "defendant" or the "Commissioner") moves, pursuant to Fed. R.Civ.P. 12(c), for judgment in her favor on the pleadings. The plaintiff cross moves for judgment on the pleadings pursuant to Fed. R.Civ.P 12(c).

## I. BACKGROUND

According to the Administrative Record in this case, the plaintiff Kevin Bubnis was born in Port Jefferson, New York, on July 15, 1957. He was married to Kerri Kubik on October 9, 1981 and has two children, who in

June of 1991 were nine and three years of age and lived with the plaintiff and his wife. Bubnis is a high school graduate who has held a wide variety of jobs including working in a delicatessen, working for a funeral home, working as Corrections Officer in the Vermont Corrections Department, driving a bus, selling furniture, working as a self-employed exterminator and working as a laborer.

The plaintiff filed an application for disability benefits with the Social Security Administration ("SSA") on July 30, 1990, claiming an inability to work due to a "disabling condition on October 16, 1987." (Tr. at 29.) According to a disability report submitted by the plaintiff to the SSA dated August 2, 1990 by a SSA reviewer, the "disabling condition" is described as a "back injury" which occurred on October 16, 1987 which stopped him from working as of that date. (Tr. at 63). The report further states that the initial injury to the plaintiff's back occurred while he was working as an asphalt laborer. (Tr. at 67.) Describing the circumstances of his injury in rather unrefined terms, the plaintiff stated:

They screwed up they got the machine stuck yelling and screaming to get things to get it unstuck. I pick up a cement post and I didn't realize how heavy it was till it was to [sic] late.

(Tr. at 68.)

A subsequent physician's report asserts that the injury occurred while the plaintiff was trying to lift a heavy cement block. The plaintiff further claims that his back was re-injured at work on October 28, 1990 causing him "more damage and far more pain and less mobility than previously reported." (Tr. at 89.) After this occurrence, the plaintiff was examined by several physicians, including orthopedic surgeons and neurologists, whose records document that the plaintiff was injured on the job. The physicians subsequently filed reports with the Workers' Compensation Board.

In addition to the disability claim filed with the Social Security Administration, the plaintiff also applied for workers' compensation benefits. In a Workers' Compensation Board Decision filed on February 15, 1990, Bubnis was awarded $300 per week for the period from October 21, 1988 to June 14, 1989. For the period from June 14, 1989 to February 13, 1990, the plaintiff was awarded $150 per week. The plaintiff also received a lump sum award of $39,000.00, including $4,000.00 for attorney's fees, allocated at a reduced earnings rate of $150.00. (Tr. at 147.) The Workers' Compensation Board's decision classified plaintiff as having a permanent partial disability and his workers' compensation case was closed. (Tr. at 147.)

Initially, in a Social Security Notice ("Notice") dated September 27, 1990, the SSA denied the plaintiff's claim for disability benefits. According to this Notice, the SSA's denial was based on its determination that the plaintiff's condition was "not severe enough" to prevent him from working, and he was further advised of his right to appeal the SSA's decision. (Tr. at 31.)

On November 15, 1990, the plaintiff filed a "Request for Reconsideration" with the SSA, stating that "[s]ince first being hurt in 1987[his] pain has increased." (Tr. at 34.) In a "Notice of Reconsideration" dated January 28, 1991, the SSA notified the plaintiff that it found "the previous determination denying [plaintiff's] claim was proper under the law." (Tr. at 54.) The Notice of Reconsideration also stated that if the plaintiff believed the reconsideration determination to be incorrect, he could "request a hearing before an administrative law judge of the Office of Hearings and Appeals." (Tr. at 54.) The plaintiff subsequently filed a "Request for Hearing by Administrative Law Judge" which was received by the SSA on March 18, 1991. (Tr. at 57.) The plaintiff's request stated,

The Social Security Administration is incorrect. I am totally disabled and unable to do any work. I am unable to climb stairs. I sleep on my couch at home now because of this.

(Tr. at 57.)

In a decision dated November 21, 1991, Administrative Law Judge Joseph Halpern found that "based upon the application filed on July 30, 1990, the [plaintiff] is entitled to a period of disability commencing October 16, 1987, and to disability insurance benefits accordingly under Sections 216(i) and 223, re-

spectively, of the Social Security Act." (Tr. at 218.)

The plaintiff received a "Notice of Award" dated February 3, 1992 which described the disability benefits he was entitled to from the SSA beginning June, 1989. On April 28, 1992, the SSA sent the plaintiff a "Notice of Change in Benefits" informing him that he had been paid too much and describing the measures he could take if he believed the SSA was incorrect in its determination that he was overpaid benefits. On July 6, 1992, the SSA sent the plaintiff another letter telling him that he had received $3,396.20 more than he was entitled to in Social Security benefits and requested that he refund the overpayment within 30 days. In this same letter the SSA warned the plaintiff that if it did not receive a refund from him, the SSA would take steps to recover the overpayment by withholding the plaintiff's full benefit beginning with the payment the plaintiff would normally receive about September 3, 1992.

On March 8, 1993 the SSA sent the plaintiff a letter summarizing his Social Security record. This letter informed the plaintiff that the SSA had used $2303.40 of his benefits to recover some of the overpayment he had received and that the amount of overpayment outstanding was $1092.80. It further advised the plaintiff regarding the workers' compensation lump sum payment of $39,000.00, stating:

> You have received a lump-sum award of $39,000.00 to settle your workers' compensation claim. A lump-sum award affects Social Security benefits in the same way periodic payments do. We treat a lump-sum award as if it were paid on a weekly basis.
>
> When we figure how much to reduce you [sic] and your family benefits, we treated the lump-sum as if you had been paid $150.00 each week. However, we could exclude $4,000.00 of the legal, medical, and other expenses. For this reason, we lowered the weekly rate from $150.00 to $134.51. . . .

(Tr. at 246.)

The letter also stated that the plaintiff would be notified later of the determination with respect to his request that the SSA reconsider the proration of his lump sum. On August 8, 1993, the SSA sent the plaintiff another update of his Social Security record. This letter detailed a re-computation of the plaintiff's workers' compensation benefits amending the prorated amount from $150.00 to $134.61 and explained that the SSA must "consider workers' compensation and/or public disability payments" in the determination of the Social Security benefit. The letter also conveyed to the plaintiff that he had a right to appeal the SSA's determination.

On or about September 9, 1993, apparently in response to a communication sent to the SSA on behalf of the plaintiff by "his representative", the plaintiff was sent a "Notice of Reconsideration" confirming the information contained in the August 8, 1993 letter regarding the reduction of his Social Security benefits and stating that the proration of the lump sum workers' compensation payment was correct and in accordance with the law. This Notice of Reconsideration further informed the plaintiff that if he thought the SSA was "wrong", that he had a right to request a hearing before an Administrative Law Judge. In response to the Notice of Reconsideration, on or about October 18, 1993, the plaintiff filed a "Request for Hearing by Administrative Law Judge" which identified his representative as Aba Heiman, Esq., ("Heiman") of Scheine, Fusco, Brandenstein & Rada, P.C. Explaining why the plaintiff desired a hearing, the Request stated:

> The Social Security Administration cannot change the terms of a lump sum settlement of a Workers Compensation case under the State statute. In New York State, a lump sum settlement is not an allocation of future payments but rather, terminates claimant's rights. Therefore, the lump sum settlement ought not be allocated as in other states. Proof of the termination of rights is the fact that there is no allocation for future medical. We, therefore, challenge the notice of reconsideration dated September 9, 1993 and request a hearing.

(Tr. at 254.)

In addition, the plaintiff's counsel sent a letter to the SSA which disputed the SSA's

determination to offset the plaintiff's disability benefits by the lump sum payment from workers' compensation, setting forth the legal basis for his argument. Relying on *Walter Billigmeier v. Cres`Dry Wall*, 174 A.D.2d 903, 571 N.Y.S.2d 600 (3d Dep't 1991), plaintiff's counsel stated:

> [*Billigmeier* ] holds in a similar context, that where a claimant receives a lump sum settlement for an unrelated injury, prior to payments made on a current injury that the lump sum payment is not to be viewed as an advance payment of benefits to be considered over an allocated period but, rather, a final payment that is separate from any periodic payments (see *Matter of Newman v. Public Oversight Board*, 127 A.D.2d 302, 304, 515 N.Y.S.2d 347, *lv. denied* 70 N.Y.2d 606, 519 N.Y.S.2d 1030, 514 N.E.2d 388).

(Tr. at 256, 295.)

Plaintiff's counsel elaborated on this argument in a brief submitted to the Administrative Law Judge and requested that:

> ... [the ALJ] issue an order to the Office of Disability Operations compelling them to acquiesce in the case holdings which hold that the Social Security Administration must look to state law in applying Workers' Compensation offset provisions, and further directing the Administration to recompute the offset based upon a lifetime allocation of claimant's lump sum settlement award for his earlier Workers' Compensation case.

(Tr. at 298, 303–04.)

In a decision dated September 8, 1994, Administrative Law Judge Emanuel Poverstein, determined that:

> the [Social Security] Administration's proration of a $39,000.00 lump-sum workers' compensation award at $150.00 a week or $650.00 a month (less legal expenses), in imposition of the workers' compensation against the claimant's disability insurance benefits was correct.

(Tr. at 313.)

At the same time, the plaintiff was further advised that if he did not agree with the ALJ's decision, he was entitled to file an appeal and was informed, "[t]o file an appeal,

you must file your request for review within 60 days from the date you get this notice." (Tr. at 307.)

Counsel for the plaintiff, in a letter addressed to the SSA's Appeals Council and dated September 23, 1994, requested that:

> ... the Administrative Law Judge's decision be reversed as a matter of legal interpretation and public policy considerations and further as a matter of acquiescing in the Circuit Court's direction to follow the State Court's interpretation of Workers' Compensation benefit issues.

(Tr. at 305–06.)

However, the timeliness of plaintiff's request for review of the ALJ's decision was questioned by Roxie R. Nicoll, ("Nicoll") Hearings and Appeals Analysis, Department of Health and Human Services, who in a letter dated January 31, 1995, stated:

> On September 8, 1994, the Administrative Law Judge issued a decision in this case which advised that the claimant had 60 days following receipt of the decision in which to file a request for review. On January 19, 1995, a request for review was filed; however, there is no statement or other information in the file as to why the request was not filed within the prescribed 60–day limit. We observe that your letter is dated September 23, 1994; however, it was not received by the Appeals Council until January 19, 1995.
>
> \*  \*  \*  \*  \*  \*
>
> An explanation for the untimely filing and any confirming evidence should be submitted within 20 days from the date of this letter. If we do not hear from you, we will assume that no additional information will be submitted and we will proceed with our action on the appeal.

(Tr. at 367.)

Plaintiff's counsel responded to Nicoll's letter on February 8, 1995, asserting that her conclusion that the plaintiff's letter of appeal was not received by the Appeals Council until January 19, 1995 "has to be erroneous." (Tr. at 368.) As evidence, plaintiff's counsel submitted a certified mail receipt showing an instamp by the Appeals Council as of Sep-

tember 29, 1994, (Tr. 369), and, further, noted that "this case was filed together with an appeal letter in the case of Brenda Blunt, and on that case the Appeals Council has acknowledged the filing." (Tr. at 368.)

The Administrative Record contains no further correspondence from Nicoll with regard to the apparent timeliness of the plaintiff's request for review of the ALJ's decision or any subsequent determinations that may have been made by the Appeals Council. Therefore, it is assumed by the Court that the appeal was timely made.

Judge Poverstein reviewed the evidence and upheld the proration of the award by the Commissioner. Based on this adverse decision, the plaintiff commenced this action. The defendant now moves pursuant to Fed. R.Civ.P. 12(c), for judgment on the pleadings in her favor. Also, the plaintiff cross-moves for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c).

II. *DISCUSSION*

A. *Standards of Review*

1. *Judgment on the Pleadings*

The applicable standard of review on a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is the same as that on a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Sheppard v. Beerman,* 18 F.3d 147 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *see also Shaw v. Rolex Watch U.S.A., Inc.,* 745 F.Supp. 982, 984 (S.D.N.Y.1990) (*citing* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1367, at p. 518–19 (2d ed.1990)). That is, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) (*quoting Conley v. Gibson,* 355 U.S. 41, 45– 46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Intern. Audiotext Network, Inc. v. AT & T,* 62 F.3d 69, 71 (2d Cir.1995).

The Second Circuit stated that in deciding a Rule 12(b)(6) motion a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local* 504, 992 F.2d 12, 15 (2d Cir.1993); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

It is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman, supra,* 754 F.2d at p. 1067, and in doing so, it is well settled that the court must accept the allegations of the complaint as true *see LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs, Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Doe v. City of New York,* 15 F.3d 264, 266 (2d Cir.1994).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8[a][2], and that "'[a]ll pleadings shall be so construed as to do substantial justice.'" *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer, supra,* 416 U.S. at 235–36, 94 S.Ct. at 1686). It is within this framework that the Court addresses the present motion for judgment on the pleadings.

2. *Review of Commissioner's decision*

Judicial review of a decision made by the Commissioner is governed by 42 U.S.C. § 405(g), which states, in pertinent part, that:

[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

*See also Diaz v. Shalala,* 59 F.3d 307, 312 (2d Cir.1995); *Smith v. Shalala,* 856 F.Supp. 118, 121 (E.D.N.Y.1994). In evaluating the evidence, "[t]he Court may not substitute its own judgment for that of the ... [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). In *Cormano v. Sullivan,* 1990 WL 92706, at *3 (E.D.N.Y.1990), the Court held that

> [t]he fact that the record as a whole might support an inconsistent conclusion is immaterial ... for the language of [section 405(g) ] ... requires that the Court uphold the Secretary's decision even should the Court disagree with such decision as long as it is supported by "substantial evidence."

*Id.* (quoting *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972)). Substantial evidence is "more than a mere scintilla." "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)); *see also, Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996); *Donato v. Secretary of Health and Human Services,* 721 F.2d 414, 418 (2d Cir.1983). Moreover, "[t]he conclusive effect of the substantial evidence rule applies not only with respect to the Secretary's findings as to basic evidentiary facts, but also to inferences and conclusions drawn therefrom." *Rodriguez v. Califano,* 431 F.Supp. 421, 423 (S.D.N.Y.1977); *see also Vasquez v. Secretary of Health and Human Services,* 632 F.Supp. 1560, 1563 (S.D.N.Y.1986). Thus, the role of the district court is limited, and substantial deference is to be afforded to the Commissioner's decision. *See Francese v. Shalala,* 897 F.Supp. 766, 770 (S.D.N.Y.1995).

In order for the Court to grant judgment on the pleadings, the movant must "clearly establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rivera v. Schweiker,* 717 F.2d 719, 722 n. 1 (2d Cir. 1983) (quoting 5 C. Wright and A. Miller, *Federal Practice and ·Procedures* § 1368 (1969)).

## B. *Statutory and Regulatory Framework*

Federal disability insurance benefits are available to those individuals who are "disabled" within the meaning of the Social Security Act. *See* 42 U.S.C. § 423(a). However, when an individual who is eligible for disability benefits is also eligible for workers' compensation benefits, the Social Security Act requires offset of the workers' compensation benefits as against the social security payments so that the total benefits received by the individual do not exceed eighty percent of his or her pre-disability income. 42 U.S.C. § 424a(a). The Act provides:

(a) Conditions for reduction; computation

If for any month prior to the month in which an individual attains the age of 65—

(1) such individual is entitled to benefits under section 423 of this title, and

(2) such individual is entitled to benefits for such month to—

(A) periodic benefits on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State, or ...

the total of his benefits under [42 U.S.C. § 423] for such month ... shall be reduced (but not below zero) by the amount by which the sum of—

(3) such total benefits under [42 U.S.C. § 423] for such month, and

(4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,

exceeds the higher of—

(5) 80 percentum of his "average current earnings," or

(6) the total of such individual's disability insurance benefits under 42 U.S.C. § 423 of this title for such month and of any monthly insurance benefits under section 402 of this title for such month based on wages and self-employment in-

come, prior to reduction under this section.

42 U.S.C. § 424a(a)(1)-(6).

The Supreme Court explained the rationale for the enactment by Congress of the offset provision in *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), stating:

> To find a rational basis for the classification created by § 224 [later amended to 42 U.S.C. § 424a], we need go no further than the reasoning of Congress as reflected in the legislative history. The predecessor of § 224, enacted along with the amendments first establishing the federal disability insurance program required a full offset of state or federal workmen's compensation payments against benefits payable under federal disability insurance. 70 Stat. 816. It is self-evident that the offset reflected a judgment by Congress that the workmen's compensation and disability insurance programs in certain instances served a common purpose, and that the workmen's compensation programs should take precedence in the area of the overlap.

*Id.* at 82, 92 S.Ct. at 257.

This provision was repealed in 1958 because Congress believed that "the danger that duplication of disability benefits might produce undesirable results [was] not of sufficient importance to justify reduction of the social security disability benefits." *Id. (citing* H.R.Rep. No. 2288, 85th Cong., 2d Sess., 13). However, in response to renewed criticism of the overlap between workmen's compensation and the social security disability insurance programs and the argument that the situation "reduced the incentive of the worker to return to the job," Congress re-examined the problem in 1965 and enacted § 424a(a) which provides:

> [b]y limiting total state and federal benefits to 80% of the employee's average earnings prior to the disability, reduced the duplication inherent in the programs and at the same time allowed a supplement to

workmen's compensation where the state payments were inadequate.

*Id.* at 83, 92 S.Ct. at 258.

When an individual receives a lump sum workers' compensation payment, the Social Security Act, 42 U.S.C. § 424a(b) further provides that:

(b) Reduction where benefits is payable on other than monthly basis

If any periodic benefit for a total or partial disability under a law or plan described in subsection (a)(2) of this section [a workmen's compensation law or plan of the United States or a state] is payable on other than a monthly basis (excluding a benefit payable as a lump sum except to the extent that it is a commutation of, or a substitute for periodic payments), the reduction under this section shall be made at such time or times and in such amounts as the Secretary finds will approximate as nearly as practicable the reduction prescribed in subsection (a) of this section.

42 U.S.C. § 424a(b).

Thus, section 424a(b) provides that a lump sum workers' compensation award that is "a commutation of, or a substitute for periodic payments", is subject to reduction "at such time or times and in such amounts as the [Commissioner] finds will approximate as nearly as practicable the reduction prescribed by [§ 424a(a) ]."

A review of the New York Workers' Compensation Statute, moreover, indicates that the Workers' Compensation Board is authorized to commute periodical payments to an injured employee to one or more lump sum payments. Section 25[5](b) of the Workers' Compensation Law states:

> The board, whenever it shall so deem advisable, may commute such periodical payments to one or more lump sum payments to the injured employee, or, in case of death, his or her dependents, provided the same shall be in the interests of justice.

N.Y.Work.Comp. Law § 25[5](b) (McKinney 1993).

The Second Circuit has affirmed the propriety of viewing a lump sum workers' compensation payment as a commutation of, or a substitute for, periodic payments. *Shabazz*

*v. Bowen*, 912 F.2d 532 (2d Cir.1990). In *Shabazz*, the plaintiff contested the Commissioner's determination that a lump sum workers' compensation payment of $18,000.00 was a commutation of, or a substitute for periodic payments. *Id.* at 533. The *Shabazz* court, however, rejected the plaintiff's argument that the lump sum payment was a settlement representing "a retroactive award for loss of wages due him after his job related injury and his discriminatory termination from that job," *id.*, and found that the award was a commutation of, or a substitute for, periodic payments.

## C.   *Summary of defendant's arguments*

The Commissioner contends that the method used to compute the reduction of the plaintiff's disability insurance benefits based on the lump sum award Bubnis received from workers' compensation was supported by substantial evidence. According to the defendant, the plaintiff was awarded weekly New York workers' compensation payments from October 21, 1988 to February 13, 1990. The plaintiff then received a lump sum award of $39,000. As a result of this lump sum award, the plaintiff was classified as having a permanent partial disability and his workers' compensation case was closed. The Commissioner alleges that she reasonably viewed the plaintiff's lump sum award of $39,000 as a commutation of periodic payments, necessitating a reduction of his disability insurance benefits. *See generally Shabazz v. Bowen*, 912 F.2d 532 (2d Cir.1990).

According to the defendant, in computing a reduction of disability insurance benefits based on a lump sum award, SSA prorates the lump sum award at an established weekly rate, using one of the three alternative methodologies set forth in SSA's Programs Operation Manual System ("POMS"). The three methodologies, in descending order of priority are:

> a.   The rate specified in the lump sum award. If the LS [lump sum] award specifies a rate based on life expectancy, use the rate to prorate the lump sum and list under code 557.
> b.   The periodic rate paid prior to the LS (if no rate is specified in the LS award).

> c.   If WC [workers' compensation], the State's WC maximum in effect on the date of injury. This figure can be used if no rate is specified in the award and there was no preceding periodic benefit. . . .

Defendant's Memorandum at 8 (*citing* POMS § D1 52002.555). Conceding that the POMS are not accorded the force and effect of law, the defendant alleges that "they are of persuasive value." Defendant's Memorandum at 8, n. 3 (*citing Powderly v. Schweiker*, 704 F.2d 1092, 1096 (9th Cir.1983)).

In this case, the defendant states that the decision of the Workers' Compensation Board notes that "[t]he Lump Sum Award is allocated at $150.00 [per week] reduced earnings rate". (Tr. at 147.) Therefore, the defendant alleges that the first methodology, namely subsection (a), the rate specified in the lump sum award, was appropriate to establish a weekly rate of reduction of $150 of the plaintiff's disability benefits. Moreover, the defendant claims that "[the Commissioner's] reliance on the first methodology outlined in the above-noted provision of the POMS reflects a reasonable interpretation of 42 U.S.C. § 424a(b)." Defendant's Memorandum at 9 (citing *Harden v. Department of Health and Human Services*, 979 F.2d 1082, 1084 (5th Cir.1992) (upholding the use of the second proration method) and *Rodlin v. Secretary of Health and Human Services*, 750 F.Supp. 146, 150–151 (D.N.J.1990) (same)). The defendant further asserts that "[t]he method of proration is 'an interpretive rule' designed by the SSA to give guidance to its staff as to how to administer or interpret a given rule or statute." *Id.* at 150.

Addressing the issue of whether a lump sum workers' compensation payment may be viewed as an advanced payment of benefits to be considered over an allocated period, the defendant refers to the provisions of the New York Workers' Compensation statute mentioned above, N.Y. Work. Comp. Law § 25[5](b), which specifically provides for the commutation of periodic payments to a lump sum payment. Defendant's Memorandum at 7.

Further, the defendant alleges that New York Workers' Compensation Law § 25[5](b)

specifically provides for the commutation of periodic payments to a lump sum payment. The statute states that:

> The board, whenever it shall so deem advisable, may commute such periodic payments to one or more lump sum payments to the injured employee, or, in the case of death, his or her dependents, provided the same shall be in the interests of justice.

N.Y.Work.Comp. Law § 25[5](b) (McKinney 1993). The defendant also cites a New York case, *Cretella v. New York Dock Co.,* 289 N.Y. 254, 256, 45 N.E.2d 429, 430 (1942), which states:

> [The New York State Workmen's Compensation Law] does empower the Industrial Board, in certain situations, to 'commute periodical payments to one or more lump payments. s 25. Such a commutation, however (although sometimes called a lump sum settlement'), is not a determination of amount by agreement of the parties, but is a mathematical computation of the present value of a series of future payments, which future payments are fixed as to amount and fixed or calculable as to number or probable number. True it is that our Compensation Law does not in terms prohibit 'settlements,' but, in view of the well-known policy and intent of the whole statute and in view of sections 32 and 33, which forbid any waiver by a claimant of his right to compensation or any release by him of benefits due, such an express prohibition of 'settlements' was probably thought by the drafters to be unnecessary.

*Id.* at 256–57, 45 N.E.2d at 430.

Without even referring to the "full power and authority" vested by statute in the Commissioner of Social Security "to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions . . .", 42 U.S.C. § 405(a), the defendant concludes her argument by stating that, "[a] reviewing court must accord substantial deference to such an interpretation of a statute by the agency and may not substitute its own construction of a statutory provision for a reasonable interpretation made by the agency."

Defendant's Memorandum at 9 (*citing Harden, id.* at 254, 45 N.E.2d 429) (*citing Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984)).

### D. *Summary of plaintiff's arguments*

The plaintiff does not dispute the constitutionality of the offset provision of the Social Security Act, Plaintiff's Memorandum of Law in Support of Motion for Judgment on the Pleadings and Administrative Transcript Pursuant to F.R.C.P. Rule 12(c) ("Plaintiff's Memorandum") at 1. However, he does contest the way the Commissioner applied it to the facts of this case. Bubnis' primary contentions are:

> 1) "the agency's refusal to consider state law in interpreting a state's workers' compensation policy," Plaintiff's Memorandum at 4, and
>
> 2) his belief that the Social Security Administration did not use the proper method in calculating how to apply the Workers' Compensation offset to his Social Security disability benefits, Plaintiff's Memorandum at 1.

The plaintiff contends that the Commissioner ignored New York State law and policies in the application of the offset provision in his case. Plaintiff's Memorandum at 7. The plaintiff cited court decisions from various federal circuits supporting the proposition that the Commissioner is required to examine state laws and policies when applying offset provisions. Plaintiff's Memorandum at 7.

Because of the Commissioner's alleged refusal to consider state law in the determining the method for calculating the Workers' Compensation offset to his disability benefits, the plaintiff claims that the defendant viewed the lump sum workers' compensation payment in an improper manner. Plaintiff's Memorandum at 8–10. According to the plaintiff, the Commissioner treated the Bubnis' lump sum workers' compensation payment as a "commutation of, or a substitute for, periodic payments." Defendant's Memorandum at 7–8. Citing *Billigmeier v. Cres Dry Wall,* 174 A.D.2d 903, 571 N.Y.S.2d 600

(3d Dep't 1991), the plaintiff alleges that a lump sum workers' compensation payment is a "final payment that is separate from any periodic payments." Plaintiff's Memorandum at 9. The *Billigmeier* Court stated:

> The lump-sum payment is not to be viewed as an advance payment of benefits to be considered over an allocated period but, rather, a final payment that is separate from any periodic payments.

*Billigmeier*, 571 N.Y.S.2d at 600.

As further support for this contention, the plaintiff cites a Ninth Circuit Case, *Hodge v. Shalala*, 27 F.3d 430 (9th Cir.1994), which was subsequently adopted as a Social Security Ruling AR 95–2(9). Defendant's Memorandum, at 10–12. The plaintiff contends that *Hodge* involved similar facts as in the instant matter. *Id.* at 431.

In *Hodge*, the plaintiff suffered a work-related injury and applied for and received workers' compensation benefits. *Id.* The state [Oregon] eventually determined that the plaintiff was permanently injured and he subsequently received a state lump-sum award for this permanent partial disability. *Id.* at 431–32. In addition to the state workers' compensation benefits, the plaintiff applied for and received federal social security benefits. *Id.* at 432. The Commissioner awarded him disability benefits and, "to avoid a windfall, the [Commissioner] offset [the plaintiff's] lump-sum award." *Id.* The plaintiff challenged both the decision to offset his lump sum award and the rate at which the award was offset. *Id.* Ultimately the Ninth Circuit upheld the Commissioner's decision to offset the lump sum award but was persuaded by the plaintiff that the offset amount should not be equal to what Hodge had previously received each month in state disability benefits, as the Commissioner argued:

> [t]he monthly offset amount should be equal to [the plaintiff's] lump-sum award divided by the number of months between the date of the award and the date [the plaintiff] reaches the age of 65.

*Id.* at 434. Noting that the *Hodge* decision differs from its policy which "according to SSA's regulation implementing section 224(b) of the Act (20 CFR 404.408(g)), the lump-sum is treated as a substitute for periodic payments and must be prorated," the Social Security Administration nevertheless adopted the *Hodge* holding as Social Security Acquiescence Ruling AR95–2(9), applying it to the states in the Ninth Circuit. Social Security Acquiescence Ruling AR 95–2(9) Plaintiff's Memorandum, Exhibit 3.

In addition, the plaintiff supports his contention by drawing a comparison between New York and Oregon workers' compensation law and noting their similarities. Bubnis alleges that there is no reason that the *Hodge* rule—AR 95–2(9) should not be applied in New York. Plaintiff's Memorandum at 19.

### E. The determination of this Court

■ The Court is unpersuaded by the plaintiff's arguments. In the Court's view, the Commissioner's reduction of the plaintiff's disability insurance benefits based on his receipt of state workers' compensation is supported by substantial evidence. The Court finds that the Commissioner properly prorated Bubnis' lump-sum workers' compensation award. According to the Workers' Compensation Board decision dated February 15, 1990, the plaintiff received a lump-sum of $39,000 with a lien in the amount $4,000 for attorneys' fees. The Board's decision allocates the lump-sum award at $150.00 a week for reduced earnings rate. The Commissioner further determined that it would be advantageous to the plaintiff if his legal expenses were credited as a percentage of his benefit. The Board's decision indicated that the plaintiff's legal expenses were $4,000. This comprised 10.256 percent of the $39,000 award. Therefore, the workers' compensation weekly rate of $150 was reduced to $134.61 for purposes of the Commissioner computation of the amount of Workers' Compensation benefits that had to be offset against Social Security benefits. The plaintiff's monthly worker's compensation benefit rate based on the lump-sum award was calculated to be $583.30 ($134.61 × 4.34 weeks).

The Court finds that the prorated amount of $150.00 for the lump-sum award is supported by substantial evidence. The lump-

sum award was prorated at a weekly rate consistent with one of the three alternative methodologies set forth in the Social Security Act's Programs Operation Manual System ("POMS"):

> a. The rate specified in the lump-sum award. If the lump-sum award specifies a rate based on life expectancy, use that rate to prorate the lump-sum and list under code 557.

The method of allocation used by the Board in its decision is listed in the Social Security Administration's Programs Operation Manual System ("POMS") as a viable option for the Commissioner to use to prorate the lump-sum award. In addition, prior to receiving the lump-sum award of $39,000, Bubnis was receiving $150.00 a week from the Workers' Compensation Board from 1988 through 1990 for his on-the-job injury. Thus, even if no rate had been specified in the Board's decision granting the lump-sum award, proration at $150.00 per week would nevertheless be proper under the second methodology in the POMS because the periodic rate paid prior to the lump-sum award was $150.00 per week.

■ Further, this Court previously held in *Frerks v. Shalala*, 848 F.Supp. 340 (E.D.N.Y. 1994) that "[a]lthough the POMS is not published in the Federal Register, and does not have the force of law, it is entitled to persuasive authority." *Id.* at 349; *See also St. Mary's Hospital v. Blue Cross & Blue Shield,* 788 F.2d 888, 890 (2d Cir.1986) (discussing the pre-POMS manual; *Davis v. Secretary of Health and Human Services,* 867 F.2d 336, 340 (6th Cir.1989); *Ruppert v. Secretary of Health and Human Services,* 671 F.Supp. 151, 158 n. 3 (E.D.N.Y.1987), aff'd in part and reversed in part, 871 F.2d 1172 (2d Cir.1989). Because the Commissioner based her decision upon the POMS, this Court finds her determination to be entitled to persuasive authority, and thus, under the facts and law in this case, should not be disturbed.

Although the Ninth Circuit in *Hodge* may have provided a another method of prorating the lump-sum award, it is not this Court's function to second guess the decision of the Commissioner or to decide whether another alternative is preferable. This Court's sole function is to determine whether the Commissioner based her determination on substantial evidence. It is not this Court's roles to promulgate a new and innovative method of allocation even if it was an alternative adopted by another Circuit.

In support of his contention, the plaintiff cites, *Billigmeier v. Cres Dry Wall,* supra, which held that a "lump sum payment is not to be viewed as an advance payment of benefits to be considered over an allocated period but, rather, a final payment that is separate from any periodic payments." *Id. Billigmeier* involves two workers' compensation claims. That action was an appeal from a decision by the Workers' Compensation Board which ruled that the carrier was not entitled to credit payments made in a previously closed workers' compensation case. In *Billigmeier,* the plaintiff was injured and received a lump-sum settlement. The plaintiff subsequently went back to work and was injured again. The workers' compensation insurance carrier for second injury contended that "it is entitled to credit for those benefits received by claimant from prior lump-sum settlement with a different carrier for an unrelated injury." The court held that the lump-sum award was a final payment that is separate from any periodic payments and stated, "because no reason exists to permit the carrier to reduce its payments to claimant, the decision [of the Workers' Compensation Board] should be affirmed."

Notwithstanding the Third Department's decision in *Billigmeier,* in *Shabazz v. Bowen,* 912 F.2d 532 (2d Cir.1990), the Second Circuit held that the Commissioner's determination providing for a lump-sum award constitutes a "commutation of, or a substitute for periodic payments," *Id.* at 533, and that holding is binding precedent on this Court.

■ As the defendant notes, "[t]he method of proration is 'an interpretative rule' designed by the SSA to give guidance to its staff as to how to administer or interpret a given rule of statute." *Rodlin v. Secretary of Health and Human Services,* 750 F.Supp. 146, 150 (D.N.J.1990). This Court gives substantial deference to the interpretation of the statute by the Commissioner and will not

substitute its own construction of the statutory provision in the place of the reasonable interpretation provided by the Commissioner.

### III. CONCLUSION

After reviewing the parties submissions, and for the reasons stated above, it is hereby

**ORDERED,** that the Commissioner's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is granted; it is further

**ORDERED,** that the plaintiff's cross-motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is denied; and it is further

**ORDERED,** that the Complaint is dismissed and the Clerk of the Court is directed to close this case.

**SO ORDERED.**