Kevin **BUBNIS,** Plaintiff–Appellant,

v.

Kenneth **APFEL,\*** Commissioner of Social Security, Defendant– Appellee.

**Nos. 1733, Docket 97–6085.**

United States Court of Appeals, Second Circuit.

Argued May 15, 1998.

Decided July 16, 1998.

---

\* Kenneth Apfel was sworn in as the Commissioner of Social Security on September 29, 1997. He is

properly substituted as a defendant in this action pursuant to Fed. R.App. P. 43(c). *See also*

Victor Fusco, Woodbury, NY, (Marc A. Grodsky, Scheine, Fusco, Brandenstein & Rada, P.C., on the brief), for Plaintiff–Appellant.

Leslie Brodsky, Assistant United States Attorney, Brooklyn, NY, (Zachary W. Carter, United States Attorney for the Eastern District of New York, Varuni Nelson, Assistant United States Attorney, on the brief), for Defendant–Appellee.

Before: CARDAMONE, McLAUGHLIN, and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

Plaintiff-appellant Kevin Bubnis is a recipient of federal disability payments who has also received a New York State workers' compensation lump-sum settlement award.

*Schaal v. Apfel,* 134 F.3d 496, 496 n. 1 (2d Cir.1998).

The Social Security Act, 42 U.S.C. § 424a(a), requires in certain circumstances (which exist here) that monthly federal disability payments be offset in part by the amount of a recipient's state workers' compensation payments. 42 U.S.C. § 424a(a). When the state benefits are paid in the form of a lump-sum payment to replace periodic payments, the federal benefits must be reduced "in such amounts as the Commissioner of Social Security finds will approximate as nearly as practicable" the reductions had the state benefits been paid on a monthly basis. 42 U.S.C. § 424a(b). The decision of the Workers' Compensation Board approving Bubnis's lump-sum settlement award specified a weekly allocation rate for the award. The Commissioner of Social Security determined that that specified rate most closely approximates the reduction that would have been made in the level of federal benefits if state benefits had been paid over time rather than in a lump sum, and therefore ordered Bubnis's monthly disability payments reduced at that rate. The rate specified in the Workers' Compensation Board decision is referenced throughout this opinion as the "allocation rate" and the rate at which the Commissioner has offset the monthly federal disability benefit is referenced as the "offset rate."

Bubnis contests the Commissioner's determination, arguing principally that because of the nature of lump-sum settlement awards under New York law, the Commissioner was required to pro-rate Bubnis's lump-sum settlement "on the basis of lifetime expectancy" in order for the monthly federal disability benefits to reflect the offset that would have been made if the workers' compensation benefits had been paid over time.

The United States District Court for the Eastern District of New York (Spatt, *J.*), concluded that the Commissioner's determination of the monthly offset rate was consistent with the Social Security Act, and granted the Commissioner's motion for judgment on the pleadings. We agree that the Com-

missioner's determination was reasonable and consistent with both the Social Security Act and New York law, and therefore affirm.

## BACKGROUND

On October 16, 1987, Bubnis injured his back on the job. Soon thereafter, he was awarded New York State workers' compensation benefits, which were adjusted in June 1989 to $150 a week. In February 1990, Bubnis received a lump-sum settlement award of $39,000, less $4,000 in counsel fees. The Workers' Compensation Board decision approving the award (i) found that this settlement, "agreed to by the claimant, employer and insurance carrier," was "fair and in the best interest of the claimant," (ii) classified Bubnis as having a "permanent partial disability," (iii) provided that "[t]he Lump Sum Award is allocated at $150.00 reduced earnings rate," and (iv) closed the case. Bubnis suffered a second injury on October 28, 1990, for which he received a workers' compensation award of $40 a week.

Bubnis was approved for federal disability insurance benefits on November 21, 1991, retroactive to June 1989. Under 42 U.S.C. § 424a(a), the monthly federal disability benefits must be reduced by the amount of monthly state workers' compensation payments to the extent that the combined payments exceed either: 80% of the recipient's "average current earnings," as defined by the Act (essentially, predisability earnings), or the total of the recipient's disability and family Social Security benefits. Section 424a(b) provides, *inter alia*, that if a federal disability benefits recipient also receives a state workers' compensation lump-sum award as a substitute for periodic workers' compensation payments, the monthly disability payments should be reduced at a rate that the Commissioner finds most closely approximates the reduction that would be prescribed if monthly workers' compensation payments had been made. The relevant text of subsections (a) and (b) is set forth in the margin.[1]

---

1. The relevant text of 42 U.S.C. § 424a(a) and (b) is as follows:
   (a) *Conditions for reduction; computation*
   If for any month prior to the month in which an individual attains the age of 65—

   (1) such individual is entitled to benefits under [42 U.S.C. § 423], and
   (2) such individual is entitled for such month to—

In computing the monthly offset rate for Bubnis's workers' compensation lump-sum settlement award; the Commissioner followed the guidelines set forth in the Program Operations Manual System ("POMS") at § DI 52001.555, which lists in descending order of priority three ways to compute the monthly offset rate when the workers' compensation benefits are awarded in a lump sum as a substitute for periodic payments:

  a.  The rate specified in the [lump sum] award. If the [lump sum] award specifies a rate based on life expectancy, use that rate to prorate the [lump sum]. . . .

  b.  The periodic rate paid prior to the [lump sum] if no rate is specified in the [lump sum] award.

  c.  If [workers' compensation], the State's [workers' compensation] maximum in effect on the date of injury. This figure can be used if no rate is specified in the award and there was no preceding periodic benefit.

> (A) periodic benefits on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State
>   . . .
> the total of his benefits under [42 U.S.C. § 423] for such month ... shall be reduced (but not below zero) by the amount by which the sum of—
> > (3) such total of benefits under [42 U.S.C. § 423] and [42 U.S.C. § 402] for such month, and
> > (4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,
> exceeds the higher of—
> > (5) 80 per centum of his "average current earnings", or
> > (6) the total of such individual's disability insurance benefits under [42 U.S.C. § 423] for such month and of any monthly insurance benefits under [42 U.S.C. § 402] for such month based on his wages and self-employment income, prior to reduction under this section.
>   . . . .
> (b) *Reduction where benefits payable on other than monthly basis*
> If any periodic benefit for a total or partial disability under [a workmen's compensation law or plan of the United States or a state] is payable on other than a monthly basis (ex-

Because the Workers' Compensation Board decision approving Bubnis's lump-sum award specified an allocation rate of $150 per week, the Commissioner determined (pursuant to the first POMS guideline) that the appropriate monthly offset rate following Bubnis's October 1990 injury was approximately $750—*i.e.*, $134.50 a week, reflecting the lump-sum settlement, less the portion attributable to attorneys' fees, plus $40 a week for the payments on the second workers' compensation claim. (Prior to this second injury, the same monthly offset rate for the lump-sum award applied, totalling approximately $580 a month.) [2]

On appeal, this decision was affirmed by the Administrative Law Judge ("ALJ") and the Appeals Council. Bubnis then sued pursuant to 42 U.S.C. § 405(g), seeking review of a final administrative determination of the Commissioner. The district court concluded that the Commissioner's determination was consistent with the Social Security Act, and therefore granted the Commissioner's motion for judgment on the pleadings.

> cluding a benefit payable as a lump sum except to the extent that it is a commutation of, or a substitute for, periodic payments), the reduction under this section shall be made at such time or times and in such amounts as the Commissioner of Social Security finds will approximate as nearly as practicable the reduction prescribed by [42 U.S.C. § 424a(a)].

**2.** The Social Security Administration recently published a Notice of Proposed Rulemaking relating to the reduction of federal disability benefits on account of receipt of state workers' compensation benefits. Proposed Rules, Social Security Administration, Reduction of Disability Benefits—Workers' Compensation and Public Disability Benefits and Payments, 62 Fed.Reg. 46,682 (Sept. 4, 1997) (hereinafter "Proposed Rules"). Essentially, the proposed rules would codify the current POMS guidelines with one exception: the text of subsection a. would be replaced by the direction to reduce federal disability payments by "[t]he rate specified in the award; but only if that rate is based on the percentage of the worker's average weekly wage required by State law." *Id.* at 46,683. No final action has been taken on the Proposed Rules. *See* Unified Agenda, Social Security Administration, 63 Fed.Reg. 22,874, 22,880–81 (Apr. 27, 1998) (noting that final action is expected in September 1998). These new rules would not affect the outcome of this case.

## DISCUSSION

Section 424a(b) provides that the Commissioner must reduce monthly federal disability benefits to reflect a workers' compensation lump-sum award only if the lump-sum award constitutes "a commutation of, or a substitute for, periodic payments." 42 U.S.C. § 424a(b). Bubnis concedes that his New York State workers' compensation lump-sum settlement award was a substitute for periodic payments and therefore that at least some reduction in federal monthly disability benefits was required. Bubnis's acquiescence is compelled by our decision in *Shabazz v. Bowen*, 912 F.2d 532 (2d Cir.1990) (*per curiam*), in which we reviewed an administrative determination that a New York State workers' compensation lump-sum award was a substitute for periodic payments, and held that the determination was supported by substantial evidence, including the fact that the plaintiff "had received weekly benefits and then received a lump sum settlement." *Id.* at 533.

Bubnis's claim on appeal is that the Commissioner's determination of an offset rate of $134.50 per week fails to comply with the requirement under § 424a(b) that this offset most closely approximate the reduction had the workers' compensation benefits been paid over time. Bubnis's alternative arguments are that: (i) the settlement should have been prorated over his remaining life expectancy because under New York law, the lump-sum settlement award represented lifetime lost earnings attributable to his disability; or at least (ii) we should follow *Hodge v. Shalala*, 27 F.3d 430 (9th Cir.1994), in which a lump-sum settlement award was prorated over the claimant's remaining estimated working life.[3]

### A. Standard of Review

■ Our review of the Commissioner's determination is narrow. We may set aside the Commissioner's decision only if it is based on legal error, or if the factual findings are not supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Yancey v. Apfel*, 145 F.3d 106, 110–11 (2d Cir.1998) (quoting *Ber-*

ry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)). The Commissioner's hand is further strengthened by the wording of § 424a(b), which says that "the reduction under this section shall be made at such time or times and in such amounts *as the Commissioner of Social Security finds* will approximate as nearly as practicable the reduction prescribed by [42 U.S.C. § 424a(a) ]." 42 U.S.C. § 424a(b) (emphasis added). Congress has thus delegated to the Commissioner the task of determining the proper offset rate for lump-sum or non-monthly periodic payments without much in the way of statutory guidance. As noted, the Commissioner has adopted certain POMS guidelines for determining the offset rate for workers' compensation lump-sum awards. Because these guidelines represent the Commissioner's interpretation of the statutory mandate, they deserve substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute. *See Connecticut Hosp. Ass'n v. Weicker*, 46 F.3d 211, 219 (2d Cir.1995); *see also Davis v. Secretary of Health and Human Servs.*, 867 F.2d 336, 340 (6th Cir.1989) (noting that although the POMS lacks the force and effect of law, it is still of persuasive value); *Powderly v. Schweiker*, 704 F.2d 1092, 1096 (9th Cir.1983) (noting same with respect to Social Security claims manual).

■ Given this deference, we will uphold the Commissioner's determination of the offset rate on Bubnis's lump-sum settlement award as long as the rate can reasonably be said to approximate most closely the rate at which Bubnis's monthly disability benefits would have been reduced had the workers' compensation benefits been paid monthly. *See Hodge*, 27 F.3d at 434–35 (requiring approximation of "the rate at which the lump-sum award would have been paid on a monthly basis"); *Mann v. Heckler*, CIV. No. 85–0163P, 1986 WL 36270, at *2 (D.Me. Mar.17, 1986) (requiring approximation of "a reduction based upon receipt of monthly payments"), *aff'd*, 802 F.2d 440 (1st Cir.1986)

---

**3.** Assuming that money has no time value, as Bubnis and *Hodge* assume, proration from December 1991 over Bubnis's remaining life expectancy (we will assume that Bubnis, born in July

1957, has a life expectancy of 80 years) would yield an offset of $64 per month; proration over his remaining estimated working life (to 65) would yield an offset of $96 per month.

(table); *see also* Proposed Rules, *supra* note 2, at 46,682 (noting that offset rate must approximate the "rate [which] would have been paid had the workers' compensation payment been made on a periodic basis").

### B. New York State Law

■ It is useful to look to the state statute in order to understand the nature of a state workers' compensation lump-sum award. *See Krysztoforski v. Chater,* 55 F.3d 857, 859 (3d Cir.1995); *Sciarotta v. Bowen,* 837 F.2d 135, 141 n. 8 (3d Cir.1988). This the Government does not dispute. At the same time, under the Social Security Act, ultimate responsibility for determining the offset rate is in the hands of the Commissioner, not the states, *see* 42 U.S.C. § 424a(b); so reference to state law may inform the analysis, but does not control it.

#### 1. The New York Workers' Compensation Statute

■ Bubnis argues that under New York law a lump-sum settlement represents a stream of lost income over the recipient's lifetime, and that the lump sum therefore must be prorated over his remaining life expectancy in order to achieve (as mandated by federal law) the closest approximation to the reduction prescribed in the event of periodic payment of the benefits. We therefore consider whether the workers' compensation lump-sum settlement award necessarily represents a stream of lost income over the recipient's lifetime.

The provision of New York law that authorizes Bubnis's lump-sum settlement award is New York Workers' Compensation Law § 15(5–b). A review of the statutory text

(set forth in the margin [4]) demonstrates that Bubnis's lump-sum settlement award (i) represented a compromise between Bubnis, and his employer and its carrier, and (ii) was approved by the Workers' Compensation Board as a "non-schedule adjustment" only after the Board determined that the settlement was fair and in Bubnis's best interest and that "the continuance of disability and of future earning capacity [could not] be ascertained with reasonable certainty." N.Y. Work. Comp. Law § 15(5–b) (McKinney 1993). The lump sum therefore does not constitute a lifetime or career-long annuity, but is instead an up-front payment commuting a stream of payments that is uncertain in duration or entitlement, or both.

These uncertainties, and the compromise nature of the award, make it difficult and maybe impossible for the Commissioner to achieve a close approximation of the monthly benefits represented by the lump-sum award. But the statutory injunction is that the Commissioner settle on the rate that is an "approximat[ion] as nearly as practicable"; and given the uncertainties, the Commissioner's adoption of the allocation rate included in the Board's decision is as close an approximation as is available. As the Maine District Court concluded in considering a setoff under the second POMS guideline of a lump sum paid under Maine law, the compromise nature of the settlement afforded

> no legal basis for assuming that the settlement was based upon the plaintiff's life expectancy. For all the court knows or the Secretary could determine, the parties may have concluded that the plaintiff's disability claims would not last

---

**4.** Notwithstanding any other provision of this chapter, in any case coming within the provisions of subdivisions three [permanent partial disability] or five [temporary partial disability] of this section, in which the right to compensation has been established and compensation has been paid for not less than three months, *in which the continuance of disability and of future earning capacity cannot be ascertained with reasonable certainty,* the board may, in the interest of justice, approve a non-schedule adjustment *agreed to between the claimant and the employer or his insurance carrier.* The board shall require, before approving any such agreement, that there be an examination of the

claimant . . ., and such approval shall only be given when it is found that the adjustment is fair and in the best interest of the claimant. The board may, in such case, order all future compensation to be paid in one or more lump sums or periodically, and any such adjustment shall be regarded as a closing of the claim unless the board find upon proof that there has been a change in condition or in the degree of disability of claimant not found in the medical evidence and, therefore, not contemplated at the time of the adjustment.
N.Y. Work. Comp. Law § 15(5–b) (McKinney 1993) (emphasis added).

a lifetime, but only for a specific term of years and reached their settlement based upon that view.

*Mann v. Heckler,* No. 85–0163P, 1986 WL 36270, at *2 (D.Me. Mar.17, 1986), *aff'd,* 802 F.2d 440 (1st Cir.1986) (table).

### 2. *Billigmeier*

Bubnis relies on *Billigmeier v. Cres Dry Wall,* 174 A.D.2d 903, 571 N.Y.S.2d 600 (3d Dep't 1991), *aff'd,* 79 N.Y.2d 994, 584 N.Y.S.2d 435, 594 N.E.2d 929 (1992) (mem.), to argue that New York law necessarily views lump-sum settlement awards as a stream of lost income over a lifetime. In that case, a workers' compensation insurer sought to reduce its weekly payments to a claimant on the ground (i) that another insurer's lump-sum award to the same claimant for an earlier injury should be allocated week by week throughout the period following the award (according to the allocation rate included in the award) until exhaustion, and (ii) that if the lump-sum award was so allocated and added to the weekly benefits the carrier was obligated to pay on the later injury, the claimant's total benefits would exceed the statutory maximum. The court rejected this argument:

> The allocation [in the lump-sum award] is done for the sole purpose of determining when the Special Fund for Reopened Cases would be liable if the case were to be reopened (*see,* Workers' Compensation Law § 25–a[1], [7] ), a situation not involved here. The lump-sum payment is not to be viewed as an advance payment of benefits to be considered over an allocated period but, rather, a final payment that is separate from any periodic payments.

*Id.* at 903–04, 571 N.Y.S.2d 600, 571 N.Y.S.2d at 600.

5. If Bubnis were correct in his interpretation of *Billigmeier, Billigmeier* would have stated that the lump-sum settlement award should be allocated evenly over the claimant's life expectancy, and that this allocated amount could be used to reduce payment on a second claim to the extent that together the payments exceed the statutory maximum. Instead, *Billigmeier* simply rules out *all* consideration of lump-sum settlements in relation to later claims.

Bubnis urges that the allocation rate stated in the Board's decision should be disregarded in determining the offset rate because under *Billigmeier* a lump-sum settlement actually represents a substitute for a lifetime of lost earnings, and thus, when computing the offset rate, only the proration of the settlement over the remaining months of the employee's life can be said to approximate most closely the monthly reduction in disability benefits had the benefits been paid periodically.

But *Billigmeier* stands for two limited propositions that have no bearing on this case: First, *for the purposes of state workers' compensation law,* a lump-sum payment cannot be allocated to reduce a second insurer's obligation to pay benefits on a separate claim because the lump-sum settlement is a "final payment that is separate from any periodic payment." *Id.; see also* N.Y. Work. Comp. Law § 15, Practice Commentaries, *Non–Schedule Adjustment (Lump Sum Award)* (McKinney 1993) ("If a claimant has accepted a lump sum settlement and then has an unrelated second compensable injury, the lump sum payment is not the same as an advance payment of benefits so as to constitute a part of the compensation for the second injury. The lump sum payment is a final payment which is separate from a periodic payment for a designated period of time."). But nothing in *Billigmeier* holds that the lump-sum award necessarily represents a stream of lost income over a lifetime.[5]

Second, *Billigmeier* holds that the allocation rate included in a Board decision approving a lump-sum settlement award may be used *for state law purposes* only to determine when the carrier has fully paid a claim settled through a lump-sum award, and when the Special Fund's liability for reopened

Perhaps *Billigmeier*'s reasoning would support an argument that a lump-sum settlement award is not at all a substitute for periodic payments, and therefore is not subject to any offset under § 424a(b); but Bubnis does not make that argument. *See Shabazz v. Bowen,* 912 F.2d 532, 533 (2d Cir.1990) (*per curiam* ) (rejecting an argument that a lump-sum settlement was not a substitute for periodic payments).

lump-sum award cases commences.[6] *See Kenney v. Walsh Const. Co.*, 38 A.D.2d 31, 34, 327 N.Y.S.2d 226, 229 (3d Dep't 1971) ("When such a settlement is made and approved a carrier's liability exists until such time as the settlement amount is paid, as if paid out of the weekly reduced earnings rate set by the board."). Federal law, however, does otherwise, for its own and different purposes. And *Billigmeier* of course cannot foreclose use of this allocation rate by the *Commissioner* for federal law purposes to determine his own offset rate. Moreover, *Billigmeier* does not say that the allocation rate is an *inaccurate* measure of the periodic rate attributable to the lump-sum award. In fact, New York uses this allocation rate to determine when the carrier is considered to have discharged its liability to the employee when it settles the claim through a lump-sum payment.

We conclude that even looking to the nature of lump-sum settlement awards under New York law, the Commissioner acted reasonably (and consistently with § 424a(b)) in applying the first POMS guideline and in determining Bubnis's offset rate by reference to the allocation rate included in the Board's decision approving Bubnis's lump-sum settlement award.

## C. *Hodge v. Shalala*

Bubnis invites us to follow the Ninth Circuit's opinion in *Hodge v. Shalala*, 27 F.3d 430 (9th Cir.1994), and to prorate the lump-sum settlement monthly over the remainder of his working life.[7] Assuming without deciding that *Hodge* is sound law, we think it is

distinguishable on the essential grounds that Hodge's lump-sum award did not contain an express allocation rate while Bubnis's did, and that Hodge's lump sum was determined by a statutory schedule that was designed by the state to reflect a stream of payments over the worker's remaining career, while the lump sum received by Bubnis is a negotiated amount that does or may reflect other variables and calculations.

The claimant in *Hodge* received $344.77 a week in state temporary disability benefits until Oregon deemed him permanently disabled, at which time he was awarded a scheduled lump sum that compensated for loss of income attributable to the 40% loss in the use of his right forearm. *Id.* at 431–32. Hodge's federal disability benefit was thereupon offset at the rate of $344.77 a week, pursuant to the second POMS guideline, *i.e.*, the periodic rate prior to the lump-sum award. *Id.* at 432. *Hodge* decided that the Commissioner's reliance on that periodic payment rate was unreasonable, because the Oregon schedule reflects by design a stream of payments over a specified period:

> [U]nder Oregon state law Hodge's lump-sum award is simply a substitute for a stream of payments for the remainder of his working life. Because under 42 U.S.C. § 424a(a) this period is presumed to extend until a person turns 65, we apply that date for the purpose of determining the monthly offsets. Accordingly, the best approximation of the monthly offset rate here, indeed the only possible approximation of that rate, is the amount arrived at by dividing the

6. The Special Fund for Reopened Cases referenced in *Billigmeier* was created to take over responsibility for workers' compensation claims that have been settled and closed for many years, but that are reopened as a result of a change in the claimant's medical condition prior to the expiration of the ultimate statute of limitations (18 years after the date of injury or eight years after the last compensation payment). The Fund is liable for the payment of an award in a reopened case in which at least seven years have elapsed since the date of injury and no workers' compensation payments have been paid during the three years prior to the date of the application for reopening. N.Y. Work. Comp. Law § 25–a(1) (McKinney 1993). For cases that have been settled with lump-sum payments, the last

date of compensation is considered "the date to which the amount paid in the lump sum settlement would extend if the award had been made on the date the lump sum payment was approved at the maximum compensation rate which is warranted by the employee's earning capacity." *Id.* § 25–a(7).

7. The Commissioner has issued an acquiescence ruling indicating its intent to follow *Hodge* in determining offset rates for Oregon workers' compensation awards for Ninth Circuit residents, but to continue to apply the POMS guidelines for other states' workers' compensation lump sum payments. Social Security Acquiescence Ruling 95–2(9) (July 12, 1995).

lump-sum award by the number of months between the date of the lump-sum award and the date Hodge reaches the age of 65.

*Id.* at 435 (citation omitted).[8]

It is significant that the Ninth Circuit in *Hodge* looked to Oregon law only after first noting the ALJ's finding that there was no offset rate specified *in haec verba* in the lump-sum award. *See* 27 F.3d at 434; *see also Harden v. United States Dep't of Health and Human Servs.*, 979 F.2d 1082, 1084 (5th Cir.1992) (emphasizing the fact that the rate "ha[d] not been specified in the compromise"). Since in Bubnis's case, the Workers' Compensation Board explicitly stated that the lump-sum award is allocated at a $150 reduced earnings rate, we cannot fault the Commissioner for adhering to this directive and using it for his own offset rate. Indeed, *Hodge* (and *Harden*) seem to point to exactly this result.

In addition, *Hodge* distinguished *Mann v. Heckler*, No. 85–0163P, 1986 WL 36270 (D.Me. Mar.17, 1986), *aff'd*, 802 F.2d 440 (1st Cir.1986) (table), which held that the character of an award as a negotiated compromise affords "no legal basis for assuming that the settlement was based upon the plaintiff's life expectancy," *id.* at *2, on the ground that in *Mann*, "the district court had no way of 'approximat[ing] as nearly as practicable' the rate at which the claimant's lump-sum settlement would have been paid on a monthly basis," *Hodge*, 27 F.3d at 435 (alteration in original), while in *Hodge*, the claimant's *scheduled* lump-sum payment was prescribed by law and explicitly deemed by Oregon law to substitute for a stream of payments for the remainder of the claimant's working life, *id.* at 436.

In the case of the lump sum awarded to Bubnis, the analog is *Mann* rather than *Hodge*. Bubnis's award was a bargain struck between Bubnis and his employer (and its insurer), that could reflect their compromise on issues such as the likelihood that Bubnis could prevail on his claim, how long any particular level of disability might last, and the value of an up-front payment. (Indeed, the New York statute authorizes such a settlement only in cases where the duration and extent of the disability cannot be determined with any reasonable certainty.) The Commissioner determined the offset rate by reference to the specific allocation rate included in the Workers' Compensation Board decision approving the award, a determination that is if anything *more* reasonable than the determination in *Mann*, which fixed the offset rate by reference to the monthly rate paid prior to the lump-sum settlement.

## CONCLUSION

The Commissioner's decision to use the allocation rate specified in the Workers' Compensation Board decision approving Bubnis's lump-sum settlement award to determine the offset rate was consistent with § 424a(b). The judgment of the district court is affirmed.

---

8. The court added that the first POMS guideline mandated the same result, because "[t]he rate specified in the lump sum award" refers "not only to a rate set forth *in haec verba*, but also to a rate specified by operation of law." *Hodge*, 27 F.3d at 435. This analysis labors hard to render meaningless the word "specified."