No. 04-160

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 264N

PATSY SIAPERAS,

       Petitioner and Appellant,

   v.

MONTANA STATE FUND,

       Respondent and Respondent.

APPEAL FROM:    The Workers' Compensation Court, Cause No. 2003-0841,
                   Honorable Mike McCarter, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Robert C. Kelleher, Sr., Attorney at Law, Butte, Montana

       For Respondent:

           Charles G. Adams, Keller, Reynolds, Drake, Johnson & Gillespie,
           Helena, Montana

                           Submitted on Briefs:  August 25, 2004

                                 Decided:  September 21, 2004

Filed:

              _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Patsy Siaperas appeals from the Workers' Compensation Court's order dated January 15, 2004, denying the increase in benefits, denying the lump sum payment, and denying attorney fees and penalty against Montana State Fund. We affirm the Workers' Compensation Court.

## BACKGROUND

¶3 On August 17, 1996, Patsy Siaperas injured her low back while working at High Plains Pizza in Dillon, Montana. Montana State Fund was insuring High Plains Pizza for its workers' compensation claims. It accepted liability for her injury and paid medical and compensation benefits based on the four biweekly pay periods prior to her accident. Those records indicated her average weekly wage was $553.84, two-thirds of which became her $369.23 weekly workers' compensation benefits. At that time, Montana State Fund knew nothing of the quarterly bonuses that High Plains Pizza paid Siaperas.

¶4 Seven years into the litigation and two months prior to the trial, Siaperas told Montana State Fund that her salary included both her base pay and bonuses that Montana State Fund had not included in the original determination of her average weekly wage. Properly

2

including the new bonuses, her average weekly wage should have been $759.99, two-thirds of which is $506.66. Nevertheless, at the time of the accident, the State's annual weekly wage capped her benefits at $384.00 per week. Montana State Fund should have been paying her $384.00 but paid her only $369.23 per week, so the weekly underpayment was $14.77.

¶5     Meanwhile, the Social Security Administration also was assessing Siaperas's claims for Social Security Disability benefits. On June 28, 2002, the administrative law judge found that a combination of medically determinable impairments–including her lower back injury caused by the industrial accident, gastroensophageal reflux disease (GERD), and gall bladder dysfunction–significantly limited Siaperas's ability to work. The administrative law judge found these impairments rendered her totally disabled and awarded her $290.74 per week. Pursuant to § 39-71-702(4), MCA (1995), Montana State Fund decreased Siaperas's benefits by 50 percent of the Social Security Disability benefits.

¶6     In February 2003, at the request of Montana State Fund, vocational consultant James Porta chose seven jobs for which Siaperas was qualified as a representative sample to determine whether Siaperas could return to work at any job. Porta completed a job analysis on each job to determine whether her physical condition prevented her from performing that job and found she was unable to perform any of the seven jobs.

¶7     Siaperas wanted to determine which of these jobs her lower back problems prevented her from performing verses which jobs her GERD and gall bladder problems prevented her from performing. Because her treating physician did not have the expertise to determine

3

which condition prevented her from performing which job, Siaperas visited Dr. Patrick E. Galvas, an Occupational Health Specialist. Dr. Galvas found that her lower back was the main limiting factor preventing her from performing five of the seven jobs, and her GERD and gall bladder problems were the main limiting factors preventing her from performing two of the seven jobs.

## STANDARD OF REVIEW

¶8 We review the Workers' Compensation Court's findings of fact to determine whether substantial, credible evidence supports them, and we review its conclusions of law to determine whether they are correct. *Hiett v. Missoula County Pub. Schs.*, 2003 MT 213, ¶ 15, 317 Mont. 95, ¶ 15, 75 P.3d 341, ¶ 15.

## DISCUSSION

¶9 We address the following issues on appeal: (1) whether the Workers' Compensation Social Security Disability offset provision, § 39-71-702(4), MCA (1995), violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (2) whether, because other physical conditions unrelated to her industrial injury prevented her from obtaining certain types of employment, Montana State Fund should decrease the percentage of the offset, and, consequently, increase her payments; (3) whether attorney fees are necessities of life under § 39-71-741(1)(c), MCA (1995), so Siaperas can obtain a lump sum payment from Montana State Fund; and (4) whether Montana State Fund reasonably represented her wages to determine her benefits for seven years. The remaining issues the Appellant raises are raised for the first time on appeal and, therefore, we do not consider them.

4

¶10 We considered the constitutionality of § 39-71-702(4), MCA (1995), which allows a workers' compensation insurance company to decrease the payments by 50 percent of the Social Security Disability benefits against workers' compensation benefits in *McClanathan v. Smith* (1980), 186 Mont. 56, 606 P.2d 507. We applied the rational basis test to the equal protection challenge and held that "the avoidance of duplication or overlapping of benefits is indeed a reasonable and permissive legislative objective," so "Montana's offset statute does not violate the equal protection clause." *McClanathan*, 186 Mont. at 66, 68, 69, 606 P.2d at 512, 513, 514.

¶11 Siaperas asserts that, because physical conditions unrelated to her industrial injury prevented her from performing certain types of employment, Montana State Fund should decrease the percentage of the offset, thus increasing the weekly benefit. That percentage of offset decrease should be equal to the percentage of jobs for which the industrial injury was not the main factor limiting job performance. Thus, if, for two of the seven jobs, an unrelated physical malady was the main limiting factor, that portion of the Social Security Disability benefits awarded because of the unrelated physical maladies would not be subject to the offset. This argument has many flaws.

¶12 No statute mandates a finite number of jobs a vocational consultant must consider in his job analyses, so he could consider any number of jobs with any variety of physical requirements. If appellant's theory held true, the number and characteristics of the jobs would become very important in determining the ratio of jobs the worker could perform. A vocational rehabilitation consultant could consider a small number of jobs that he expected

5

the worker could not perform because of conditions unrelated to the industrial injury, and thus increase the percentage; or he could consider a small number of jobs that he expected the worker could perform except for the conditions unrelated to the industrial injury, and thus decrease the percentage. Ultimately, only after considering every possible position for which a worker was qualified could the insurer divine the true percentage. The legislature could not have intended this absurd result.

¶13 Also, allowing this offset would mean an additional battery of tests every time an insurer wanted to use the offset statute. The legislature could not have intended this, either. In *Watson v. Seekins* (1988), 234 Mont. 309, 763 P.2d 328, we considered whether a workers' compensation insurer may pro-rate the Social Security Disability offset provided in § 39-71-702(4), MCA (1995). Like this case,

> [t]he dispute is how much disability pay should be used to compute setoff: all of it or only part of it. The statute simply does not allow for Watson's formula to exclude a part of the entire award. The words are not there. The role of the Court is not to insert what has been omitted by the statute. *Chennault v. Sager* (1980), 187 Mont. 455, 610 P.2d 173. Had the legislature intended an exemption, exclusion, or any other formula to apply to reduce the amount subject to setoff, it is reasonable to assume that it would have expressed it in the statute.

*Watson*, 234 Mont. at 315, 763 P.2d at 332.

¶14 The legislature fixed the setoff amount at 50 percent of the Social Security Disability benefits, so the plain meaning of the statute prohibits an insurer from reducing the offset to increase the payments. We hold that § 39-71-702(4), MCA (1995), does not allow any reductions or modifications to the proportion of the Social Security offset.

¶15 Section 39-71-741(1)(c), MCA (1995), allows a claimant to obtain a lump sum payment from an insurer in a workers' compensation case without the approval of the insurer, but only in limited circumstances. The statute allows a lump sum payment "if a claimant and an insurer dispute the initial compensability of an injury and there is a reasonable dispute over compensability." Montana State Fund, however, did not dispute the initial compensability of the injury and paid benefits to Siaperas upon her claim. Further, Montana State Fund does not dispute the level of her compensability. It received knowledge of the underpayment seven years after the injury and mere months before the trial and demonstrated no unwillingness to pay.

¶16 The statute also allows a lump sum payment in permanent total disability cases only when the worker demonstrates a financial need that "relates to [1] the necessities of life; [2] an accumulation of debt incurred prior to the injury; or [3] a self-employment venture that is considered feasible under criteria set forth by the department;" or "arises subsequent to the date of injury or arises because of reduced income as a result of the injury." Section 39-71-741(1)(c), MCA (1995). Siaperas claims her attorney fees are necessities of life. The ordinary meaning of the term "necessities of life" includes such things as food, clothing, shelter and medical care. Attorney fees fail to rise to that level of exigency. We affirm the Workers' Compensation Court's decision to deny the request for a lump sum payment.

¶17 Section 39-71-2907, MCA (1995), gives a workers' compensation judge the authority to assess a penalty against an insurer for, *inter alia*, unreasonably delaying or refusing to make payments. Until the eve of trial, Siaperas had not requested her $14.77 increase in

weekly workers' compensation benefits. Upon Siaperas notifying Montana State Fund of its liability for further payments, it did not delay payment of the $14.77 weekly increase. In the absence of a delay, the statute does not apply. Further, without a request, one cannot refuse that request. Montana State Fund never refused to make any payments. Again, under the plain meaning of the statute, it has no application. For the foregoing reasons, we deny the claims for a penalty.

¶18 Siaperas cannot maintain a claim for attorney fees under § 39-71-611, MCA (1995), because the statute requires the insurer initially deny the claim. Montana State Fund never denied her claim, so this statute likewise does not apply.

¶19 Section 39-71-612, MCA (1995), requires the satisfaction of three elements to justify an an award of reasonable attorney fees in cases in which the initial benefits are later increased: (1) an "insurer pays or submits a written offer of payment of compensation under chapter 71 or 72 of this title," (2) "controversy relates to the amount of compensation due," (3) "the case is brought before the workers' compensation judge for adjudication of the controversy," and (4) "the award granted by the judge is greater than the amount paid or offered by the insurer."

¶20 The $14.77 weekly benefits that Montana State Fund failed to pay for the first seven years since the accident fails the second element. At no time did Montana State Fund ever refuse to pay the $14.77 or claim that Siaperas was not entitled to that amount, so there has been no controversy relating to the amount of compensation due. The apportionment request for decreasing the Social Security Disability offset failed in Workers' Compensation Court

8

and in this Court.  Without an increase in benefits, that claim fails element (4).  We deny Siaperas's claims for penalties against Montana State Fund and claims for attorney fees.

¶21    We affirm the Workers' Compensation Court's denial of increased workers' compensation benefits, denial of a lump sum payment, and denial of attorney fees.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM REGNIER
/S/ JIM RICE

9