**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATSY SIAPERAS,
              *Plaintiff-Appellant,*

v.

MONTANA STATE COMPENSATION
INSURANCE FUND,
              *Defendant-Appellee.*

No. 05-35459

D.C. No.
CV-04-00013-RWA

OPINION

Appeal from the United States District Court
for the District of Montana
Richard W. Anderson, Magistrate Judge, Presiding

Submitted February 5, 2007*
Seattle, Washington

Filed March 27, 2007

Before: Raymond C. Fisher and Richard C. Tallman,
Circuit Judges, and Richard Mills, District Judge.**

Opinion by Judge Mills

---

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, sitting by designation.

## COUNSEL

Robert C. Kelleher, Sr., Butte, Montana, for the plaintiff-appellant.

Charles G. Adams, Keller, Reynolds, Drake, Johnson, and Gillespie, P.C., Helena, Montana, for the defendant-appellee.

## OPINION

MILLS, District Judge:

### FACTS & PROCEDURAL HISTORY

Patsy Siaperas severely injured her back on August 17, 1996, while working for High Plains Pizza in Dillon, Montana. She filed a workers' compensation claim and was determined to be permanently totally disabled pursuant to § 39-71-702, Montana Code. The State of Montana Mutual Insurance Fund (the "State Fund"), as the insurer of Siaperas' employer, accepted liability for Siaperas' injury. The State Fund computed her disability rate to be $369.23 (two-thirds her $553.84 average current earnings ("ACE")). Once Siaperas' bonuses came to light, the State Fund recognized that her ACE was $759.99 and that her disability rate should have been $506.66. However, Montana law capped workers' compensation benefits at $384 per week; thus, the underpayment amounted to $14.77 per week.

What brought this case to the fore is what happened when Siaperas sought Social Security Disability Insurance benefits ("SSDI") from the Social Security Administration. On June 28, 2002, an administrative law judge found Siaperas to be totally disabled as of February 6, 1997, for purposes of SSDI. As a result, Siaperas received SSDI retroactively to December 1, 1999, at a rate of $290.74 per week. On April 16, 2003, the State Fund reduced Siaperas' workers' compensation benefits by $145.37, an amount equal to 50% of her SSDI. The reduction was done pursuant to § 39-71-702(4) Montana Code. The State Fund notified Siaperas that she had been overpaid benefits totaling $25,397.59. On May 6, 2003, an adjuster for the State Fund notified Siaperas that a recalculation showed her overpayment to be the still higher figure of $28,299.17.

Siaperas contested the State Fund's calculations before the Montana Workers' Compensation Court, *Siaperas v. Montana*

*State Fund*, WCC No. 2003-0841, unsuccessfully arguing that an off-set of her benefits violated the U.S. Constitution's Equal Protection Clause as well as 42 U.S.C. § 424a. She appealed to the Montana Supreme Court, but was again unsuccessful on this issue. *See Siaperas v. Mont. State Fund*, 100 P.3d 167 (Mont. 2004) (unpublished disposition). She then filed a declaratory judgment action in the U.S. District Court for the District of Montana. The parties consented to having their case heard by U.S. Magistrate Judge Richard W. Anderson.

Siaperas made no Equal Protection claim. However, she again contended that § 424a barred the State Fund from reducing her benefits below 80% of her ACE. Although Siaperas' Second Amended Complaint did not argue preemption, the district court considered whether Montana law was preempted by § 424a. The State Fund moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). Judge Anderson sided with the State Fund on both issues and granted the State Fund's motion on April 7, 2005. Siaperas timely appealed.

## STANDARD OF REVIEW

The court uses a *de novo* standard when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim. *Bassiri v. Xerox Corp.*, 463 F.3d 927, 929 (9th Cir. 2006). "Upon review, we 'must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true.' " *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007) (quoting *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)). Dismissal is proper only when there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**ANALYSIS**

**[1]** A person who receives SSDI and workers' compensation benefits cannot receive combined benefits that exceed 80% of her ACE. *See* 42 U.S.C. § 424a(a). When a person's combined benefits exceed 80% of her pre-disability earnings, SSDI must be reduced via an "offset." *Id.* Nevertheless, a state can reduce its own workers' compensation benefits on the basis of social security disability benefits. *Id.* at § 424a(d). This is commonly referred to as a "reverse offset." To prevent a person from being subjected to state and federal offsets, the Social Security Act provides that a person's workers' compensation benefits will not be offset if the state is executing a reverse offset. *Id.*

The State Fund executed a reverse offset against Siaperas' SSDI. The reverse offset, which totaled 50% of Siaperas' SSDI, was authorized by Montana law. *See* § 39-71-702(4) Mont. Code Ann. (authorizing reduction "by an amount equal . . . to one-half the federal periodic benefits for the week"). That law has been tested and deemed constitutional. *See McClanathan v. Smith*, 606 P.2d 507 (Mont. 1980).

**[2]** After the reverse offset, Siaperas' combined benefits totaled less than 80% of her ACE. Siaperas contends that § 424a prevents her combined benefits from being reduced to an amount that is less than 80% of her ACE. Section 424a creates a benefits "ceiling" that prevents individuals from obtaining more than 80% of their ACE. *See Bubnis v. Apfel*, 150 F.3d 177, 179 (2d. Cir. 1998); *accord*, *Berger v. Apfel*, 200 F.3d 1157, 1159 (8th Cir. 2000); *Merz v. Sec'y of Health & Human Serv.*, 969 F.2d 201, 204 (6th Cir. 1992); *Draper v. Sullivan*, 899 F.2d 1127, 1128 (11th Cir. 1990); *Sciarotta v. Bowen*, 837 F.2d 135, 137 (3d Cir. 1988); *Iglinsky v. Richardson*, 433 F.2d 405, 407 (5th Cir. 1970). However, no circuit court has held that § 424a creates a benefits "floor" of 80%. Nothing in § 424a's statutory language establishes one either. Rather, Congress enacted § 424a out of concern that

workers might be discouraged from returning to work if their combined federal and state benefits exceeded 80% of their ACE. *See Richardson v. Belcher*, 404 U.S. 78, 82-83 (1971). Had Congress intended to create a "floor," it would have provided language to that effect.

This leaves us to consider preemption. We review a district court's preemption analysis *de novo*. *Chamber of Commerce v. Lockyer*, 463 F.3d 1076, 1082 (9th Cir. 2006) (en banc). Preemption analysis begins with the "basic assumption that Congress did not intend to displace state law." *Id.* at 1085 (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). Preemption is a question of congressional intent, and the " 'purpose of Congress is the ultimate touchstone' of preemption analysis." *Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1413 (9th Cir. 1996) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)).

**[3]** Federal law may preempt state law under the Supremacy Clause of the Constitution. U.S. Const. art. VI, cl. 2. "Preemption can occur in one of three ways: express pre-emption by statute, occupation of the field, or conflict between state and federal regulation." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 495 (9th Cir. 2005), *cert. denied,* 126 S.Ct. 2887, 165 L.Ed.2d 916 (U.S. Jun. 19, 2006).

**[4]** "Express preemption occurs when Congress enacts a statute that expressly commands that state law on the particular subject is displaced." *Gadda v. Ashcroft,* 377 F.3d 934, 944 (9th Cir. 2004). Express preemption is not a possibility here because Congress has not enacted any law to give the federal government authority over state workers' compensation programs.

**[5]** Additionally, it is clear that Congress did not intend to occupy the field of disability benefits. Congress would not have coordinated benefits between the federal and state gov-

ernments, as it did in § 424a(d)'s reverse offset provision, if it intended to occupy the field of disability benefits. To determine if Congress intended to occupy a field, courts must ascertain Congress' intent in enacting the federal law. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747-48 (1985). The Supreme Court's *Richardson* decision recognized this lack of intent to occupy the field when it stated that if there is any overlap between a federal disability insurance program and a state workers' compensation program, "workmen's compensation programs should take precedence . . . ." *Richardson*, 404 U.S. at 82.

**[6]** Finally, there is no conflict between § 424a and Montana Code § 39-71-702(4). A conflict occurs when compliance with both federal and state laws is impossible. *See Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963). Because § 424a does not establish a combined benefits floor of 80% ACE, no conflict occurs when § 39-71-702(4) causes a combined benefits award to be less than 80% ACE.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the district court's order granting the State Fund's motion to dismiss.